**Max J. BISHOP et al., Plaintiffs,**

v.

**J. E. CROFTS & SONS, Defendant and Appellant,**

v.

**KAIBAB INDUSTRIES, a Utah Corporation, Defendant and Respondent.**

**No. 13957.**

Supreme Court of Utah.

Jan. 26, 1976.

---

5. See Uniform Commercial Code, Sec. 3–408, Official Comment, 3; *Hallowell v. Turner*, 94 Idaho 718, 496 P.2d 955 (1972).

6. See Note 2, supra.

Ken Chamberlain of Olsen & Chamberlain, Richfield, for the defendant and appellant.

Norman H. Jackson, Richfield, for defendant and respondent.

W. Clark Burt, Salt Lake City, for plaintiffs.

MAUGHAN, Justice:

J. E. Crofts & Sons, hereafter Crofts, appeals from a summary judgment, which made distribution of a trust account to Crofts and Kaibab Industries, hereafter Kaibab. The award to each party was the amount refunded to the fund by the insurance company, which was based on the amount of premiums paid by each party. This was done under the theory of a constructive trust. We affirm.

Plaintiffs are the trustees under an agreement and declaration of trust established by the Utah Automobile Dealers Association, hereinafter referred to as the U. A.D.A. It is a nonprofit trade association, for the purpose of providing group insurance for employees of members of the U. A.D.A. Plaintiffs filed an action in interpleader, alleging that they are holding a sum of money under the terms and conditions of the trust in a certain account designated "J. E. Crofts & Sons." They alleged that both Kaibab and Crofts assert adverse claims, to all or part of the sum. Plaintiffs tendered the sum to the court, praying that defendants be required to interplead, and that plaintiffs be discharged from all liability to either defendant.

Crofts, a corporation, answered, asserting that it alone was the rightful recipient under the terms of the Trust agreement. Kaibab, a corporation, in its answer, demanded an accounting and alleged that it had made total premium payments of $89,729.27 into the J. E. Crofts & Sons account from May 1, 1965, to April 30, 1969. Kaibab pleaded that it had made payments of $22,074.60 directly to plaintiffs and payments of $67,654.67 to J. E. Crofts & Sons, for the purpose of delivery and payment to the plaintiffs, in behalf of Kaibab. Kaibab asked the court to declare Crofts a constructive Trustee to deliver to Kaibab its proportionate share of the fund.

After completing discovery, both defendants moved for summary judgment. The trial court granted summary judgment, awarding Kaibab 92.2% of the fund ($9,289.66) and Crofts 7.8% ($785.89). In a memorandum decision, the trial court found that the fund was the product of refunds and dividends from the payment of insurance premiums by the defendants. It noted that the premium payments were "loaded" to a certain extent for the protection of the insurance carrier, and that the

actual cost of the insurance provided for defendants' employees would be determined subsequently on the basis of the experience of the carrier, after which the appropriate dividends or refunds would be made. The court observed there was no dispute as to the amounts each of defendants had paid as premiums, during the time the fund was created; that J. E. Crofts & Sons was a member of U.A.D.A.; and that Kaibab was not during the period involved. The court adopted the theory of a constructive trust, and thereunder awarded each defendant its proportionate share · of the fund.

Crofts argues that under the express provisions of the trust agreement, it is entitled to the entire fund, and cites the following provisions of the trust, contending this action is conclusively determined thereby:

> Article I, Section 1. The term "Subscribers" as used herein shall mean those employers engaged in the automobile industry who are members of the Utah Automobile Dealers Association and who from time to time participate in and subscribe to this Agreement . . .

> Article I, Section 2. The term "Employees" as used herein shall mean employees of Subscribers and shall be deemed to include the individual proprietors or partners whenever a Subscriber is a proprietorship or a partnership.

> Article IV, Section 2. All funds received by the trustees hereunder as part of the trust fund shall be used and applied for the following purposes:

> \* \* \* \* \* \*

> (e) To make refunds at such time and in such manner as may be deemed by the trustees to be proper to Subscribers who are such or the date of which refunds are to be made.

> Article IV, Section 5. No employee of a Subscriber or any person claiming by or through any such employee shall have any right, title or interest in or to the Fund or any part thereof; . . .

Appellant argues that it is a subscriber, as defined in the agreement; that it exclusively may receive the refunds set forth in Article IV, Section 2(e).

The fund held by plaintiffs has two sources, although it was designed as one account; viz. "J. E. Crofts & Sons." Part of the fund ($785.89) was a refund on premiums paid for group insurance for the employees of Crofts, a member of U.A.D.A. The remainder of the fund ($9,289.66) was a refund on the premiums for group insurance for the employees of Kaibab. The instant dispute involves the adverse claims to this latter amount.

The employees of Kaibab are involved in operating a sawmill and connected logging operations. Originally, the sawmill was owned by two partnerships, J. E. Crofts & Sons [1] and Pearson and Crofts; each was a member of U.A.D.A. The partnerships procured group insurance for the employees of the sawmill under the trust agreement, the account was designated "Pearson & Crofts," until December 1, 1964; at this time the designation of the account was changed to "Pearson # 2." In March, 1967, the name by which the account was designated was changed to "J. E. Crofts & Sons."

The individual members of the partnerships incorporated the operations of the sawmill on December 30, 1963. The name of the corporation was Crofts-Pearson Industries, which is the predecessor to defendant Kaibab. The shareholders of this new corporation were the individual partners, who under the trust agreement, Article 1, Section 2, are deemed employees. The new corporation, as a separate legal entity, did not qualify as a subscriber under the terms of the trust, since it was neither engaged in the automobile industry nor a member of U.A.D.A. Nevertheless, a group insurance for the employees of this corporation was included in a subscrib-

---

1. This group was incorporated under the same name in August, 1965.

er's account. In December, 1964, the saw-mill was assigned a separate account, Pearson # 2.

In July, 1965, the individual share-holders, who had been the partners in Pearson and Crofts, sold their corporate holdings in Crofts-Pearson Industries. At this time Pearson and Crofts received as a settlement, its share of the equity and reserve account held by the trustees. In August, 1965, the name of the corporation was changed to Kaibab-Crofts Industries. The corporation continued to procure its group insurance through the trust agreement, and in March, 1967, the account was designated "J. E. Crofts & Sons." Subsequently, the original shareholders sold their interest in the corporation, and its name was changed to Kaibab Industries in October, 1968. During 1965, Kaibab made five payments directly to U.A.D.A. Thereafter the corporation paid its premiums to J. E. Crofts & Sons, who in turn remitted them to U.A.D.A. From September, 1968, to February, 1969, the corporation was billed by and paid the premiums to U.A.D.A. During all this period the group insurance was included under an account of a subscriber, a member of the U.A.D.A.

From the time the Kaibab was incorporated, its employees were not employed by a subscriber to the trust. The subscribers, who had a beneficial interest in the corporation, agreed to procure the group insurance available under the trust agreement. By the subscribers' acceptance of this undertaking to transact business for the corporation, they established an agency relationship. The Trustees, with knowledge that the subscribers were acting as agents for Kaibab, and its predecessor corporations, permitted the participation in the group insurance program under the agents-subscribers' accounts. As pointed out by appellant, since volume in business made premiums less costly, insurance coverage under the trust was extended to any enterprise of the subscribers.

Article 5, Section 2 of the trust provides:

The trustees shall have power to construe the provisions of this Agreement and the terms used herein and any construction adopted by the trustees in good faith shall be binding upon all the parties hereto.

The agreement was thus construed to permit subscribers to act as agents to procure group insurance for any of their enterprises.

During the relevant time period, Kaibab paid insurance premiums in the sum of $89,729.27 and Crofts paid $7,571.31. Crofts received dividends for the years 1966 and 1967 totalling $4,851.72. Were Crofts awarded the entire fund of $10,075.-55, it would receive dividends of $14,927.-27, for the payments of $7,571.31 in premiums. This would result in a profit to a member of the U.A.D.A. arising from an activity of that organization—clearly a violation of the Incorporation of the U.A.D.A.

Article III provides:

This corporation shall not engage in any form of trade or commerce, or carry on any activity which will result in a remunerative profit to the corporation or to its members.

Article VIII provides:

This corporation is a non-profit corporation, and no moneys shall be payable to any of the members by reason of the ownership of a certificate of membership in said corporation. All moneys coming into the hands of said corporation shall be used for the purposes for which this corporation is organized and shall not inure to the benefit of any member of the corporation except as salary paid for services by such member duly performed for and on behalf of said corporation as authorized by the Board of Trustees.

Were the argument advanced by Crofts to be countenanced, an activity of U.A.D.A. (the establishment of a trust to procure group insurance for members), would be a means for a member to become a compensated insurance solicitor. However, were

Crofts to be deemed an agent to transact business on behalf of Kaibab, viz., procuring group insurance for the principal's employees, the activity of U.A.D.A. is within its authorization.

Crofts' duty as an agent is set forth in Restatement of Agency 2d, Section 388:

> Unless, otherwise agreed, an agent who makes a profit in connection with transactions conducted by him on behalf of the principal is under a duty to give such profit to the principal.

In Comment a. of this section, it is stated that an agent has a duty to account for any unexpected and incidental accretions whether or not received in violation of duty.

> Thus an agent who, without the knowledge of the principal, receives something in connection with, or because of, a transaction conducted for the principal, has a duty to pay this to the principal even though otherwise he has acted with perfect fairness to the principal and violates no duty of loyalty in receiving the amount.

Illustration 3 of Section 388 is particularly relevant to the instant case:

> 3. A, acting for P, takes out insurance on P's premises, advancing the amount of the premium and having the insurance taken in his own name to secure his advances. The insurance company declares a rebate or dividend upon the premiums paid. A is under a duty to credit this to P in spite of a contrary usage among insurance agents, not known to P.

Crofts had a duty to return to Kaibab the refunds or dividends returned on the premiums paid for Kaibab's employees. The trial court ruled properly that Crofts was accountable for the commission to Kaibab, upon the theory of a constructive trust. This ruling is in accord with the Restatement, Restitution, Section 197, which provides:

> Where a fiduciary in violation of his duty to the beneficiary receives or retains a bonus or commission or other profit, he holds what he receives upon a constructive trust for the beneficiary.

Comment a. of this section explains that this rule applies where something is given and received by a fiduciary[2] in good faith, if it was received by him for an act done by him in connection with the performance of his duties as a fiduciary (agent).

CROCKETT and TUCKETT, JJ., concur.

ELLETT, Justice (dissenting):

For the reasons stated in the main opinion I dissent, and wish to add the following:

The Utah Automobile Dealers Association was formed by automobile dealers to administer group insurance to its members. The members are the subscribers, the sole beneficiaries, and are the only ones who may be called upon to make contributions to the fund in case the premiums paid in are not sufficient to cover losses.[1] They are the only ones who are entitled to receive the dividends, if any.

Kaibab Industries insured its employees through Crofts and got all it bargained for, to-wit—insurance coverage. The automobile dealers association makes no claim that Crofts is at fault in allowing Kaibab to insure its employees through Crofts.

Article IV, Section 5, of the trust agreement provides:

> No employee of a Subscriber or any person claiming by or through any such employee, shall have any right, title or interest in or to the Fund or any part thereof; provided, however, that any em-

---

2. An agent is a fiduciary with respect to matters within the scope of his agency. Restatement, Agency 2d, Section 13.

1. If there had been a loss, one can hardly believe that Kaibab would be trying to share in it.

ployee who shall be actually covered by any policy of insurance held by the trustee shall, subject to the terms and conditions of the policy under which the coverage is afforded, be entitled to the insurance benefits in the amount and to the extent therein provided.

The employees of Kaibab got coverage which was enforceable against the trust. The fact that the losses were less than premiums paid did not entitle Kaibab or any other person to receive a rebate of the premiums paid. All dividends would belong to the subscribing members.

I would reverse the trial court and award all of the dividend to the appellant, and would award costs to him.

HENRIOD, C. J., concurs in the views expressed in the dissenting opinion of ELLETT, J.